FILED
2009 Feb-20  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| HAL H. GIST, JR. and PAMELA R. GIST, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. CV-07-S-506-NW |
| | ) |
| WERNER ENTERPRISES, INC., and JACK CLIFTON TAYLOR, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiffs Hal and Pamela Gist, a married couple, originally filed suit in the Circuit Court for Lauderdale County, Alabama, against defendants Werner Enterprises, Inc. ("Werner") and Jack Clifton Taylor ("Taylor"). The Gists' claims all arise out of a motor vehicle collision involving an automobile operated by Hal Gist and a tractor-trailer truck owned by Werner and operated by Taylor. Plaintiffs' state court complaint included a claim against Taylor for negligent and/or wanton operation of the tractor-trailer rig (for which they assert Werner also is liable as Taylor's employer); a claim against Werner for negligent and/or wanton hiring, training, supervision, and retention; a claim against both defendants for negligent and/or wanton maintenance of the tractor-trailer rig; and a claim against both

defendants by Pamela Gist for loss of consortium.[1]  Defendants removed the case to this court on March 20, 2007, asserting federal jurisdiction based upon diversity of citizenship and satisfaction of the minimum amount in controversy.[2]  *See* 28 U.S.C. § 1332.

This opinion addresses defendants' motion for partial summary judgment.[3] Defendants request that summary judgment be entered on all of plaintiffs' claims for wantonness, as well as on all claims involving negligent entrustment, hiring, training, supervision and/or retention.  Upon consideration of defendants' motion, the parties' briefs, and the evidentiary submissions, the court concludes the motion should be granted in part and denied in part.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 indicates that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]  "[T]he

---

[1]*See* Complaint, appended to doc. no. 1 (Notice of Removal).

[2]Doc. no. 1 (Notice of Removal).

[3]Doc. no. 37.

[4] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable

plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence
> and make all reasonable inferences in favor of the party opposing
> summary judgment.
>
> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an issue
> affecting the outcome of the case. The relevant rules of substantive law
> dictate the materiality of a disputed fact. A genuine issue of material
> fact does not exist unless there is sufficient evidence favoring the
> nonmoving party for a reasonable [factfinder] to return a verdict in its
> favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal

quotations and citation omitted) (bracketed text suppled).

## II. SUMMARY OF FACTS

Defendant Jack Taylor is a commercial truck driver. In 2000, Taylor completed

a training course at the Commercial Drivers Institute in Gulfport, Mississippi.[5] Upon

completion of the course, and upon passing a driving test, Taylor received a

---

to the revised version.

[5]Doc. no. 38 (defendants' evidentiary submission), Tab 1 (Deposition of Jack Taylor), at 33-34.

Commercial Drivers License ("CDL") from the State of Mississippi.[6]  Defendant Werner Enterprises, Inc., first hired Taylor as a commercial driver in April of 2000.[7]

In July of 1999, Taylor received a citation in Marietta, Georgia, for an improper lane change that resulted in an accident.[8]  The 1999 citation occurred while Taylor was driving his personal vehicle.  On July 13, 2000, Taylor received a citation in Matheston, Mississippi, for disregarding a traffic control device while driving a Werner commercial vehicle.[9]  On August 29, 2000, he received a citation from the State of Louisiana for speeding, also while driving a Werner commercial vehicle.[10]  Additionally, a motor vehicle report ("MVR") Werner obtained on July 2001 indicated that Taylor had "accident involvement" on December 29, 2000;[11] however, Taylor was driving his personal vehicle during that incident.[12]

Taylor also was involved in several accidents while on duty for Werner.  Werner's records indicate that, on September 20, 2000, Turner was "moving forward & struck another vehicle."  On October 6, 2000, Taylor was "moving forward &

---

[6]*Id.* at 36-37.

[7]*Id.* at 112.

[8]*Id.* at 89-91.

[9]*Id.* at 58-59; *see also* defendants' evidentiary submission, at Tab 3 (Motor Vehicle Report).

[10]Defendants' evidentiary submission, at Tab 3 (Motor Vehicle Report).

[11]Doc. no. 39 (plaintiffs' evidentiary submission), at Exhibits B, C.

[12]Taylor Deposition, at 82-83.

-4-

struck a fixed object." On February 15, 2001, Taylor was "backing up & struck a fixed object." On March 1, 2001, Taylor "got stuck" and damaged his truck.[13]

Taylor voluntarily resigned his employment with Werner in December of 2003. He reapplied, and was rehired, in September of 2004.[14] On May 26, 2005, Taylor received a citation for speeding from the State of Tennessee.[15] The record contains conflicting evidence as to the rate of Taylor's speed when he received this citation. An MVR from the State of Mississippi indicates that Taylor was going 65 miles per hour in a 55 mile-per-hour zone. On the other hand, an MVR from the State of North Carolina indicates that Taylor was going 75 miles per hour in a 55 mile-per-hour zone.[16] On November 10, 2005, Taylor received two citations from the State of North Carolina: one for speeding, and another for improper lane usage. Again, the record contains conflicting evidence with regard to Taylor's rate of speed on November 10, 2005. The citation Taylor received from North Carolina authorities indicates that he was traveling at 79 miles per hour in a 55 mile-per-hour zone.[17] Taylor apparently struck a deal with the North Carolina authorities, because he ultimately pled guilty

---

[13]Plaintiffs' evidentiary submission, at Exhibit D. *See also* Taylor Deposition, at 61-63, 85.

[14]Taylor Deposition, at 111-13.

[15]*Id.* at 65-66.

[16]Plaintiffs' evidentiary submission, at Exhibit A.

[17]Plaintiffs' evidentiary submission, at Exhibit G.

to driving at a rate of 64 miles per hour in a 55 mile-per-hour zone.[18]

Taylor did not report the citations he received in 2005 to anyone in Werner's safety department, although Werner's policy dictated that he do so. However, Taylor did inform his dispatcher at Werner about the citations he received in North Carolina, so that he could be routed through North Carolina for court appearances. Taylor does not recall if he specifically informed anyone at Werner about the citation he received in Tennessee.[19] He did testify that an employee in Werner's safety department informed him that he did not have to report all of his traffic violations himself, because Werner would obtain an MVR each year that would disclose every violation Taylor had received.[20] Despite Werner's apparent confidence that an MVR would disclose all traffic-related incidents involving Taylor, the MVR Werner obtained from the State of Georgia on September 27, 2005 did not report any violations, including the May 2005 citation in Tennessee.[21]

Werner's employment records reflect other incidents related to Taylor that did not involve traffic citations or accidents. Taylor served as a trainer for Werner

---

[18]*See id. See also id.* at Exhibit A; defendants' evidentiary submission, at Exhibit 11.

[19]Taylor Deposition, at 126-29. *See also* defendants' evidentiary submission, Exhibit 2 (Deposition of Della Sanders), at 50, 58-59.

[20]Taylor Deposition, at 132-36.

[21]*See* defendants' evidentiary submission, at Exhibit 12.

student drivers.[22]  On March 3, 2003, Werner's safety department documented that Taylor had not been using his log books properly, and that he allowed a student driver to drive past midnight, in violation of Werner's curfew policy for trainee drivers.[23] On June 26, 2003, one of Taylor's trainee drivers, Georgetta Pitts, reported that Taylor runs stop signs and stop lights, and that Taylor had inquired why she was only traveling 40 to 50 miles per hour in a construction zone when the truck could go faster.[24]  Werner investigated Pitts' complaint by talking with Taylor about the allegations.[25]  On October 10, 2003, Tasha Look, another student driver, reported that Taylor had driven the truck on her log time, and that he instructed her to drive after midnight, in violation of the curfew policy.[26]  Taylor admitted that he allowed Look to drive after midnight, but he denied driving on Look's log time.[27]  Taylor also admitted that he allowed a third student driver, James Gorby, to drive after midnight.[28]

The motor vehicle collision made the basis of plaintiffs' claims occurred on

---

[22]Taylor Deposition, at 149.

[23]Plaintiffs' evidentiary submission, at Exhibit P.

[24]Plaintiffs' evidentiary submission, at Exhibits R & S.

[25]Defendants' evidentiary submission, Exhibit 14 (Deposition of Susan Martin), at 50-61.

[26]Plaintiffs' evidentiary submission, at Exhibits T, U, & V.

[27]Taylor Deposition, at 180, 182.

[28]Martin Deposition, at 71-73.

August 11, 2006.  On that date, defendant Jack Taylor was driving an unloaded Werner truck on United States Highway 43 in Colbert County, Alabama.  The posted speed limit was 55 miles per hour, but Taylor was traveling at a speed of only about 40 to 45 miles per hour.  A drizzling rain had been falling, and the road was wet.[29] Taylor approached the intersection where the collision occurred and observed the traffic light turning red.  Taylor began applying his brakes, but the truck started to slide, and he believed that, if he had continued braking, the truck would have "jack-knifed."[30]  Taylor was unable to stop his truck without what he perceived to be a significant risk of jack-knifing, and he skidded into the intersection with his tires locked.  At the same time, Hal Gist's vehicle also pulled out into the intersection. Taylor's truck collided with Gist's vehicle, striking it on the driver's side door and pushing it through the intersection.[31]

Ricky Joe Little, the officer who investigated the accident, noted that Taylor was not under the influence of alcohol or other drugs, that Taylor showed no signs of fatigue or other defects, and that Taylor's truck showed no signs of mechanical problems.[32]  Little also estimated Taylor's speed at the point of impact to be between

---

[29]Taylor Deposition, at 249-62.

[30]*Id.* at 257-59.

[31]*Id.* at 257-59. *See also* defendants' evidentiary submission, Exhibit 12 (Deposition of Ricky Joe Little), at 45-58.

[32]Little Deposition, at 77-82.

35 and 40 miles per hour, but Taylor had estimated that he was traveling only about 25 miles per hour at the time of impact.[33]  Little observed that Taylor's speed slowed "very little" before the point of impact, and he estimated that Taylor had begun braking only about ten feet before impact.[34]

Following his investigation, Little issued Taylor a citation for running the red light.[35]  Taylor's employment with Werner was suspended on the date of the accident,[36] and he was officially terminated on September 6, 2006.[37]

## II. DISCUSSION

### A.    Wantonness

Plaintiffs have effectively abandoned their wantonness claims by failing to respond to defendants' well-supported arguments that summary judgment should be granted on those claims.[38]  Issues and contentions not raised in a party's brief are

---

[33]Little Deposition, at 52-54.

[34]*Id.*

[35]*Id.* at 89.

[36]Taylor Deposition, at 26.

[37]Plaintiffs' evidentiary submission, Exhibit I (Deposition of Jim Kochenderfer), at 34.

[38]Plaintiffs make blanket statements to the effect that defendants' motion for summary judgment should be denied in its entirety, and that all of plaintiffs' claims should be submitted to a jury. *See* doc. no. 39 (plaintiffs' brief), at 2 ("[T]he defendants' motion for summary judgment is due to be denied."), 29 ("The defendants' motion for summary judgment is due to be denied and all matters presented to a jury.").  However, plaintiffs do not specifically address any of defendants' arguments that summary judgment should be granted on the wantonness claims.  Instead, plaintiffs' brief focuses on refuting defendants' arguments in favor of granting summary judgment on their claims for negligent entrustment, hiring, training, supervision, and retention.

deemed abandoned.  *See, e.g.*, *Chapman,* 229 F.3d at 1027 ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards.").

*Cf. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.  There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

Even if plaintiffs' wantonness claims could not be considered abandoned, summary judgment still would be due to be granted on those claims because there is no evidence to support them.  Wantonness is defined by the Alabama Code as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or

safety of others." Ala. Code. § 6-11-20(b)(3) (1975). What constitutes wanton misconduct depends on the facts presented in each case. *Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004) (citing *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371 (Ala. 1989)). In all situations, however, wantonness "requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission." *Tolbert*, 903 So. 2d at 114. *See also Lynn Strickland Sales & Service*, *Inc. v. Aero-Lane Fabricators*, *Inc.*, 510 So. 2d 142, 145-46 (Ala. 1987) ("Wilfulness or wantonness imports . . . knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term 'negligence,' which conveys the idea of inadvertence."), *overruled on other grounds by Alfa Mutual Insurance Company v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998).

Stated slightly differently, wantonness grows out of a person's purposeful — as opposed to an unintentional — breach of a duty imposed by law. On the other hand, "[t]o prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Roush*, 723 So. 2d at 1256. It is the conscious *doing of an act*, with callous disregard of the *understood risk* of injury to others, that defines wanton conduct. *See Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) ("To survive summary judgment, then, Mr.

-11-

Monroe must establish a genuine issue of fact as to whether Brown (1) acted consciously when he attempted to drive through the intersection before the light changed from yellow to red; and (2) was conscious, based on existing conditions, that injury was a likely or probably [*sic*] result of his actions.").

There is no evidence that Taylor acted with reckless or conscious disregard of Hal Gist's (or anyone else's) personal safety.  To the contrary, the record indicates that Taylor attempted to stop his truck before entering the intersection, and that he also acted to prevent his truck from jack-knifing.  In other words, the record shows that Taylor consciously tried to *prevent* harm, not that he consciously disregarded the risk of harm.  Accordingly, summary judgment is due to be granted on all of plaintiffs' claims for wantonness.

**B.    Negligent Entrustment, Hiring, Training, Supervision, and Retention**

Defendants also argue that summary judgment should be granted on plaintiffs' claims for negligent hiring, training, supervision, and retention.[39]  The court finds

---

[39]Defendants assert that plaintiffs' claims for negligent hiring, training, supervision, and retention should be lumped together as a claim for negligent entrustment.  Plaintiffs asserted no such claim, and the court will not rewrite the allegations of plaintiffs' complaint for them.  The title of plaintiffs' claims ultimately makes little difference, however, because the analysis on a claim of negligent entrustment closely resembles the analysis on a claim for negligent hiring, training, supervision, or retention.  *See Edwards v. Valentine*, 926 So. 2d 315, 320 (Ala. 2005) ("'The essential ingredients of a cause of action for negligent entrustment are:  (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages.'") (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)).

genuine issues of material fact with regard to whether Taylor can be considered incompetent or unfit for his job, whether Werner had knowledge of any incompetence, and whether Werner's disregard of Taylor's alleged incompetence caused plaintiffs' injuries.  *See Baldwin v. Blue Cross/Blue Shield of Alabama,* 480 F.3d 1287, 1309 (11th Cir. 2007) (holding that a plaintiff must show that defendant "had actual knowledge of [its employees'] harassment and did nothing about it (for negligent retention) or would have known about the harassment had it exercised due and proper diligence (for negligent training and supervision)"; *see also Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 983 n.1 (Ala. 1999) ("In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.  Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.  It is incumbent on the party charging negligence to show it by proper evidence.  This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice.  While such specific

-13-

acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.") (quoting *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970)) (internal quotation marks omitted).  Accordingly, summary judgment is due to be denied on plaintiffs' claims for negligent hiring, training, supervision, and retention.

## III.  CONCLUSION

In accordance with the foregoing, defendants' motion for partial summary judgment is due to be granted in part and denied in part.  Plaintiffs' wantonness claims will be dismissed.  All of plaintiffs' negligence claims — including those for negligent hiring, training, supervision, and retention — will remain.  An appropriate order will be entered contemporaneously herewith.

DONE this 20th day of February, 2009.

_____
United States District Judge